JAMES ANDREW HINDS, JR. (SBN 71222)
jhinds@jhindslaw.com
PAUL R. SHANKMAN (SBN 113608)
pshankman@jhindslaw.com
HINDS & SHANKMAN, LLP
21257 Hawthorne Blvd., Second Floor
Torrance, CA 90503-5501
Telephone: (310) 316-0500
Facsimile:  (310) 792-5977

Attorneys for Secured Creditor Dutch Harbour
Financial Ltd.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMAGENETIX, INC.,<br><br>          Plaintiff,<br>vs.<br><br>ROBINSON PHARMA, INC. et al.,<br><br>      Defendants. | Case No. 14CV02557 BEN (KSC)<br><br>**NOTICE OF SECURED CREDITOR'S LIEN AGAINST ALL RECOVERIES FOR THE PLAINTIFF IMAGENETIX, INC.** |

**COMES NOW** Secured Creditor Dutch Harbour Financial Ltd.
(hereinafter referred to as the "DHF"), through its counsel states as follows:

On December 17, 2012, Imagenetix filed a voluntary chapter 11 case
before the United State Bankruptcy Court of the Southern District of California
entitled In re Imagenetix, Inc., Case No. 12-16423 MM 11.

Pursuant to the Settlement Agreement by and between TriPharma, LLC
(hereinafter referred to as "TriPharma") and Imagenetix, Inc. (hereinafter
referred to as "Imagenetix"), a true and correct copy of which is attached

1

hereto as Exhibit "1" and incorporated herein by this reference as if set forth in full, TriPharma and Imagenetix settled and resolved years of litigation between the parties over the ownership and use of the University of Minnesota patent No. 6,899,892 and the use and production of various nutritional supplemental products based on clinical studies by the University of Connecticut, as well as the Exclusive Marketing and Supply Agreement between TriPharma and Imagenetix, dated June 27, 2006, and a number of amendments and restatements thereto.  The Settlement Agreement has attached thereto a Further Amendment to Amended and Restated Exclusive Marketing and Supply Agreement, dated, effective as of August 29, 2013.

As part of the Imagenetix chapter 11 case, Imagenetix obtained approval of the terms of the settlement between Imagenetix and TriPharma.  Attached hereto as Exhibit "2" and incorporated herein by this reference as if set forth, is a true and correct copy of the Order of the Honorable Margaret M. Mann, United State Bankruptcy Judge, approving the Settlement Agreement.

On or about April 21, 2015, DHF acquired the Claim of TriPharma and all of the rights associated with the Settlement Agreement by and among TriPharma and Imagenetix.  Notice of the Acquisition and Assignment of the TriPharma Claim was duly filed with the United State Bankruptcy Court of the Southern District of California in the In re Imagenetix, Inc. case.  Attached hereto as Exhibit "3" and incorporated herein by this reference as if set forth, is a true and correct copy of the Notice of the Acquisition and Assignment of the TriPharma Claim a filed with the United State Bankruptcy Court of the Southern District of California in the In re Imagenetix, Inc. case.

Pursuant to Settlement Agreement between Imagenetix and TriPharma, Imagenetix was required to make a payment to DHF as successor to TriPharma on or before March 1 and on or before June 1, 2015.  Imagenetix failed to make the required payments.  On or about August 8, 2015, DHF

NOTICE OF SECURED CREDITOR'S LIEN AGAINST ALL RECOVERIES FOR THE PLAINTIFF IMAGENETIX, INC.

served its formal Notice of Default on Imagenetix and on or about August 10, 2015, DHF filed with the United State Bankruptcy Court of the Southern District of California in the <u>In re Imagenetix, Inc.</u> case its formal Notice of Default. Attached hereto as Exhibit "4" and incorporated herein by this reference as if set forth, is a true and correct copy of the Notice of Default as filed with the Court.

 As part of the Settlement Agreement, TriPharma, and as assignee of the rights of TriPharma, DHF was granted a lien interest in "[a]ll assets of Imagenetix, tangible and intangible, including all intellectual property rights, cash, receivables and rights of any kind ("Collateral")."  The Collateral includes any recovery rights asserted by Imagenetix in this action.

 **THEREFORE**, DHF respectfully places all parties in this action and the Clerk of the Court of the lien rights of DHF any recovery rights asserted by Imagenetix in this action.  Any and all recoveries awarded to Imagenetix, monetary, tangible, or intangible, from are to be sent to the following address:

Hinds & Shankman, LLP
Clients' Trust Account
21257 Hawthorne Blvd., Second Floor
Torrance, CA 90503-5501

Dated: November 23, 2015   Respectfully submitted,

       JAMES ANDREW HINDS, JR.
       PAUL R. SHANKMAN
       HINDS & SHANKMAN, LLP


       By:<u>   /s/ James Andrew Hinds, Jr.</u>
       JAMES ANDREW HINDS, JR.
       Attorneys for Secured Creditor Dutch
       Harbour Financial Ltd.

# EXHIBIT "1"

# EXHIBIT "1"

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is entered into this 29th day of August 2013 ("Execution Date") by and among Imagenetix, Inc. ("Imagenetix") and William Spencer ("Spencer"), on one hand, and TriPharma, LLC ("TriPharma") and Evan Dameshek ("Dameshek"), on the other hand (Imagenetix, Spencer, TriPharma and Dameshek are referred to herein, collectively, as the "Parties"), with reference to the following facts and circumstances.

### RECITALS

A.      On December 17, 2012 ("Petition Date"), Imagenetix filed in the United States Bankruptcy Court for the Southern District of California ("Bankruptcy Court"), as Case No. 12-16423-MM11, a Chapter 11 petition for relief ("Bankruptcy Case").

B.      Imagenetix is a Nevada corporation.  Spencer is the Chief Executive Officer and President of Imagenetix.

C.      TriPharma is a Delaware limited liability company.  Dameshek is the managing member of TriPharma.

D.      Imagenetix had a license from the University of Minnesota for the exclusive rights to use the University of Minnesota's patent (Patent No. 6,899,892), which patent was subsequently purchased from the University of Minnesota (subject only to a limited retention of rights for non-commercial use in research by the University of Minnesota) and then assigned to First Fruits Business Ministry, LLC ("UM Patent").

E.      By utilizing the UM Patent, Imagenetix is able to cause to be manufactured nutritional supplement products, intended for fat and weight reduction, based upon clinical studies related thereto, including a study by the University of Connecticut ("UConn Study") (collectively, the "Product").

F.      Imagenetix and TriPharma entered into an Exclusive Marketing and Supply Agreement, dated June 27, 2006, and a number of amendments and restatements thereto, and modified thereafter in arbitration (collectively, the "Original EMSA").

G.      Pursuant to the Original EMSA, Imagenetix has granted to TriPharma an exclusive license to distribute the Product worldwide, in accordance with the terms and conditions of the Original EMSA.

H.      On or about June 17, 2010, Imagenetix filed a Demand for Arbitration, naming TriPharma and Dameshek as respondents, and asserting, in part, causes of action against TriPharma and Dameshek for declaratory relief and breach of contract.  On July 1, 2010, TriPharma and Dameshek filed an Answer to Imagenetix's Notice of Claim and TriPharma filed a Counterclaim against Imagenetix and Spencer.  On July 15, 2010, Imagenetix and Spencer filed a Reply and Answer to TriPharma's Counterclaim.  The Parties thereafter addressed their disputes through arbitration ("Arbitration I").

I.      In September 2011, an arbitrator issued an interim arbitration award, followed by a final award (the "Arbitration I Award") on November 2, 2011, against Imagenetix on its claims for termination of the Original EMSA and breach by TriPharma and in favor of TriPharma in the amount of approximately $3,935,000 for its claims of fraud and breach of contract.  In addition to awarding actual and punitive damages, costs, interest and attorneys' fees, the Arbitration I Award confirmed that Imagenetix had not terminated the Original EMSA, confirmed the exclusivity of TriPharma's rights to the UM Patent, confirmed TriPharma's exclusive right to market Product by reference to the UConn Study, and extended the initial term of the Original EMSA.

CLEAN-#190247-v11-Imagenetix_TriPharmaStlmtAgmt.docx
Exhibit "1", Page 4

J.       On April 27, 2012, the Arbitration I Award was confirmed as a judgment of the Superior Court of the State of California for the County of San Diego (the "TriPharma Judgment").  On August 3, 2012, the TriPharma Judgment was amended to add an additional award of $157,005 in post-arbitration attorneys' fees.

K.       On July 16, 2012, TriPharma recorded a Notice of Judgment Lien ("TriPharma Judgment Lien").  The TriPharma Judgment also formed the basis for an Order to Appear for Judgment Debtor Exam ("ORAP"), which created an ORAP lien.  TriPharma asserts that, by reason of the TriPharma Judgment Lien and the creation of the ORAP lien, TriPharma has a lien encumbering all of Imagenetix's assets.  Imagenetix disputes such assertion, contending, among other things, that (i) TriPharma's judgment lien encumbers only Imagenetix's accounts receivable and inventory, and (ii) TriPharma's judgment lien is junior in priority to a security interest encumbering Imagenetix's assets in favor of Pacific Rainbow, Inc. ("Pacific Rainbow") and that TriPharma's junior-priority interest has no value in accordance with the provisions of Section 506 of the Bankruptcy Code.  TriPharma disputes such contention, asserting, among other things, that Pacific Rainbow's security interest is subject to avoidance as a fraudulent conveyance under Section 548 of the Bankruptcy Code and under applicable California law.

L.       On April 25, 2012, TriPharma filed a Demand for Arbitration before JAMS Dispute Resolution, requesting a declaratory judgment that TriPharma is entitled to the exclusive use of the trademark, "Trisynex" ("Arbitration II").  On June 7, 2012, Imagenetix filed an Answer to the Demand for Arbitration.

M.       On January 12, 2012, Imagenetix filed in the United States District Court for the Southern District of California, as Case No. 3:12-cv-00089-H-RBB, an action later amended to include claims against GNC Holdings, Inc. and other defendants (collectively, "GNC Action

Defendants"), pursuant to which Imagenetix asserts, in part, causes of action for infringement of the Trisynex trademark and unfair competition under the Lanham Act ("GNC Action").

N.    On or about February 23, 2010, TriPharma filed in the United States District Court for the Central District of California, as Case No. SACV 10-222, an action against Solstice International Partners, LLC and other defendants (collectively, "Solstice Action Defendants"), asserting, in part, causes of action for false advertising and unfair competition ("Solstice Action"). Imagenetix filed in the Solstice Action cross-claims against TriPharma, asserting, in part, causes of action for set off and equitable apportionment of recovery ("Imagenetix Cross-Claims"). On February 8, 2013, the Solstice Action Defendants filed a Third-Party Complaint against Spencer asserting, in part, causes of action for breach of warranty, negligent misrepresentation and equitable indemnity.

O.    On or about February 17, 2010, TriPharma filed in the United States District Court for the Central District of California, as Case No. SACV10-00196, an action against MAX International, LLC ("MAX") and other defendants (collectively, "MAX Action Defendants"), asserting, in part, causes of action for breach of contract and false advertising ("MAX Action").

P.    On or about August 24, 2012, TriPharma filed in the Superior Court for the State of California, County of San Diego, as Case No. 37-2012-00102957, an action against Spencer, Debra Spencer, Lowell Giffhorn ("Giffhorn"), Shannon Cooper, Imagenetix, and Carla Rosewall (collectively, "Fraudulent Transfer Action Defendants"), asserting, in part, causes of action for fraudulent transfer in connection with Spencer's and Debra Spencer's post-judgment transfer of their stock in Imagenetix allegedly for little or no consideration ("Fraudulent Transfer Action").

Q.    In or about March 2011, Imagenetix transferred to First Fruits Business Ministry, LLC ("FFBM") Imagenetix's right, title and interest in and to the UM Patent ("FFBM

Transaction"). Pursuant to the terms of the FFBM Transaction, Imagenetix was granted

membership interests in FFBM amounting to 30% of the issued and outstanding membership

interests in FFBM. In lieu of cash for the final payment that FFBM owed to Imagenetix in

connection with the FFBM Transaction, Imagenetix also was granted interests in an affiliate of

FFBM, First Fruits Beverage Company, LLC ("FFBC").

     R.     Imagenetix asserts that FFBM contends that Imagenetix's interest in FFBM has

been diluted such that Imagenetix had, as of the Execution Date, a 12% interest in FFBM.

     S.     On or about March 14, 2012, TriPharma filed in the United States District Court

for the Central District of California, as Case No. SACV12-00404, an action against FFBM,

FFBC, Roger Catarino ("Catarino") and other defendants (collectively, "First Fruits

Defendants"), asserting, in part, causes of action for declaratory relief, false advertising, and

tortious interference with contractual relations ("First Fruits Action"). On or about April 2,

2013, TriPharma was awarded in the First Fruits Action a judgment against the First Fruits

Defendants in the amount of $4,659,990, and thereafter obtained an award of $643,360.50 in

attorneys' fees.

     T.     On or about July 24, 2013, TriPharma filed in the Bankruptcy Case the following

proofs of claim: a proof of claim (Claim No. 15) in the amount of $4,496,044.86; a proof of

claim (Claim No. 16) in the amount of $37,145,966.23; and a proof of claim (Claim No. 17) in

the amount of $277,766.04 plus additional unspecified damages (such claims are referred to

herein, collectively, as the "TriPharma Bankruptcy Claims").

     U.     The Parties have engaged in negotiations to resolve all of the disputes existing

among them, including, without limitation, disputes with respect to Arbitration I, Arbitration II,

the GNC Action, the Solstice Action, the MAX Action, and the Fraudulent Transfer Action

(collectively, the "Litigation"), the payment of the TriPharma Judgment, and the treatment of the TriPharma Bankruptcy Claims pursuant to the terms of a Chapter 11 plan of reorganization to be filed by Imagenetix in the Bankruptcy Case ("Plan"). The Parties enter into this Agreement for the purpose of resolving, fully and finally, such disputes, in accordance with the terms and conditions set forth herein.

   **NOW, THEREFORE,** based upon the foregoing Recitals, the mutual covenants, promises and agreements contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged by the Parties, and the Parties intending to be legally bound hereby, the Parties agree as follows:

**AGREEMENT**

   1.    **Incorporation of Provisions of Agreement into the Plan.**  Subject to the occurrence of the Approval Date (as defined in paragraph 26 hereof), the provisions of this Agreement, as applicable, shall be incorporated into the Plan.  Except as provided expressly herein to the contrary, the provisions of this Agreement shall become effective and binding upon the Parties only upon the "Effective Date" of the Plan, as such term will be defined by the Plan and approved by any order of the Bankruptcy Court confirming the Plan ("Plan Confirmation Order").

   2.    **Amendment of Original EMSA.**  Imagenetix and TriPharma hereby agree to amend the Original EMSA in accordance with the terms and conditions of that Further Amendment to Amended and Restated Exclusive Marketing and Supply Agreement, dated, effective as of August 29, 2013 ("Amended EMSA"), a true and complete copy of which is attached hereto as Exhibit "1" and is incorporated herein by this reference.  Subject to the provisions of paragraph 27(e) hereof, the Original EMSA, as amended by the Amended EMSA,

-6-

shall be assumed by Imagenetix, in accordance with the provisions of Section 365 of the

Bankruptcy Code, effective as of the Approval Date of this Agreement.  TriPharma shall consent

to Imagenetix's assumption of the Original EMSA, as amended by the Amended EMSA, and

TriPharma hereby acknowledges and agrees that Imagenetix shall not be required to pay to

TriPharma any cure payments in connection with Imagenetix's assumption of the Original

EMSA, as amended by the Amended EMSA, except that Imagenetix shall be required to comply,

fully and completely, with all of its obligations to TriPharma pursuant to this Agreement.

Imagenetix and TriPharma hereby acknowledge and agree that the Amended EMSA shall not be

effective or binding upon them until the occurrence of the Approval Date of this Agreement.

        3.     **Rights of TriPharma Pursuant to Amended EMSA.**  Imagenetix hereby

acknowledges and agrees that, subject to the provisions of paragraph 27(e) hereof, upon the

Approval Date of this Agreement, TriPharma shall have pursuant to the Amended EMSA a paid-

up license under the Amended EMSA and that TriPharma shall be deemed to have satisfied all

conditions to TriPharma's exercise of TriPharma's rights of renewal pursuant to the Amended

EMSA, without any requirement by TriPharma to give to Imagenetix any notice of the exercise

of such rights of renewal.

        4.     **TriPharma's Right to Manufacture Product/Supply of Celadrin.**

           a.     Manufacture of Product.  Imagenetix hereby acknowledges and agrees

that, subject to the provisions of paragraph 27(e) hereof, effective as of the Approval

Date of this Agreement, TriPharma shall have the absolute and irrevocable right to

manufacture itself all Product provided for by the Amended EMSA.

           b.     Supply of Celadrin.  Subject to the provisions of paragraph 27(e) hereof,

effective as of the Approval Date of this Agreement, TriPharma may order from

Imagenetix, and Imagenetix then shall supply to TriPharma, for a period of five years after the Approval Date of this Agreement, Celadrin at a price of $30.00 per kilogram of Celadrin for use by TriPharma solely in connection with the sale of weight loss products, which use is expressly licensed by Imagenetix, and for no other purpose.  Thereafter, Imagenetix shall supply Celadrin to TriPharma for the same purpose at a price not greater than the lowest price Imagenetix charges in the ordinary course to any of its customers.

5.  **Transfer of Trade Secrets.**  Subject to the provisions of paragraph 27(e) hereof, effective as of the Approval Date of this Agreement, Imagenetix shall irrevocably assign and otherwise transfer to TriPharma all rights, know-how, trade secrets and all manufacturing, technical and testing information relating to the Product.  Without limiting the generality of the foregoing, subject to the provisions of paragraph 27(e) hereof, as soon as practicable after the Approval Date of this Agreement, Imagenetix shall notify The Dow Chemical Company ("Dow") that Imagenetix does not object to Dow's selling directly to TriPharma ingredients necessary to manufacture the Product.  Imagenetix acknowledges that it is barred by injunction from selling the Product and accordingly, on or as soon as practicable after the Approval Date of this Agreement, Imagenetix shall deliver to TriPharma Imagenetix's entire remaining inventory of Product (consisting of approximately 700 kg) in accordance with TriPharma's directions with TriPharma bearing the cost of such delivery.

6.  **Assignment of Trisynex Trademark.**  Subject to the provisions of paragraph 27(e) hereof, effective as of the Approval Date of this Agreement, Imagenetix shall assign and transfer to TriPharma all of Imagenetix's right, title and interest in and to the trademark, "Trisynex" ("Trisynex Trademark").

7. **Representations and Warranties of Imagenetix with Respect to Original EMSA.** Imagenetix hereby represents and warrants to TriPharma the following with respect to the Original EMSA:

a. No Conflicting Transactions. Except for Imagenetix's sale of the UM Patent and license of the Trisynex Trademark to FFBM (now terminated), Imagenetix has not purported to license or otherwise enter into transactions in conflict with TriPharma's exclusive rights under the Original EMSA, or under the Amended EMSA as and when the Amended EMSA becomes effective and binding upon Imagenetix and TriPharma.

b. No Competitive Products. Imagenetix does not have, either currently or under development, any weight-loss products competitive with the Product.

c. No Sales of Product after November 8, 2011. Except for a single shipment of approximately 1,000 kg shipped on or about November 8, 2011, Imagenetix has not sold or delivered any Product to any person after the date of the Arbitration I Award.

8. **Transfer of Interests in FFBM and FFBC.** Effective as of the Effective Date of the Plan, and pursuant to the Plan, Imagenetix shall transfer to TriPharma all of Imagenetix's ownership interests and related rights in and to FFBM and FFBC and any and all rights and interests that Imagenetix may have in any assignee or successor of FFBM or FFBC, including, without limitation, Trinity Beverage ("FFBM/FFBC Interests Transfer"). The FFBM/FFBC Interests Transfer shall be effectuated pursuant to the Plan without any representation or warranty of any nature whatsoever made by Imagenetix regarding the scope or extent of the interests transferred by Imagenetix except only that Imagenetix shall represent and warrant that it has not consented expressly or affirmatively to any dilution of its membership interest in FFBM

CLEAN-#190247-v11-Imagenetix_TriPharmaStlmtAgmt.docx
Exhibit"1", Page 11
12

to an interest less than 26% in FFBM, or regarding the rights and remedies that may be conferred

upon TriPharma, as a consequence of the FFBM/FFBC Interests Transfer.  Without limiting the

generality of the foregoing, the Parties hereby acknowledge and agree that, by the FFBM/FFBC

Interests Transfer, Imagenetix shall make no representation or warranty of any nature whatsoever

regarding whether any consent of any other member of FFBM or FFBC is required in order to

effectuate the FFBM/FFBC Interests Transfer; provided, however, that, in the event that consent

to the FFBM/FFBC Interests Transfer is required and cannot reasonably be obtained by

Imagenetix (a) Imagenetix shall assign to TriPharma, pursuant to the FFBM/FFBC Interests

Transfer, all rights, interests and remedies with respect to FFBM and FFBC which Imagenetix

may assign to TriPharma pursuant to applicable law and the applicable governance agreements

of FFBM and FFBC, including, without limitation, all economic benefits that Imagenetix may

have pursuant to its interests in FFBM and FFBC, including any right to receive distributions

from FFBM or FFBC, and (b) Imagenetix shall vote its membership interests in FFBM and

FFBC as reasonably requested by TriPharma, consistent with any duties and obligations that

Imagenetix may have as a member of FFBM or FFBC.  Notwithstanding anything to the contrary

contained in the foregoing, the FFBM/FFBC Interests Transfer shall not include any transfer of

Imagenetix's agreement with FFBM entitled, "Agreement for Assignment of Patent and Other

Property," or any amendments or restatements thereof.  Imagenetix shall give all notices of such

transfers required by operating agreements.

9.     **Allocation of Value with Respect to FFBM/FFBC Interests Transfer.**

Imagenetix hereby makes no representation or warranty of any nature whatsoever with regard to

the value of the FFBM/FFBC Interests Transfer; provided, however, for the purpose of this

Agreement only, Imagenetix and TriPharma shall attribute a value of $300,000 to Imagenetix's

transfer to TriPharma of Imagenetix's interest in FFBM, and a value of $150,000 to Imagenetix's transfer to TriPharma of Imagenetix's interest in FFBC.

**10.** **Imagenetix Payments to TriPharma/Amendment of TriPharma Bankruptcy Claims.**

a. Settlement Payments. Imagenetix and TriPharma hereby acknowledge and agree that, subject to the terms and conditions of this Agreement, as of the Execution Date of this Agreement, Imagenetix is indebted to TriPharma in the aggregate amount of $7.5 million ("Stipulated Obligation"), $3.5 million of which shall be deemed to be an allowed secured claim in the Bankruptcy Case and $4.0 million of which shall be deemed to be an allowed general unsecured claim in the Bankruptcy Case; provided, however, that, subject to Imagenetix's complying strictly with its payment obligations pursuant to this Agreement, Imagenetix shall be entitled to satisfy, discharge and pay in full the Stipulated Obligation by paying to TriPharma pursuant to the Plan a total payment of $2.5 million ("Settlement Payment Obligation"). The Settlement Payment Obligation shall be payable pursuant to the Plan in accordance with the following terms and conditions:

i. Effective Date Payment. Within five calendar days after the Effective Date of the Plan, Imagenetix shall pay to TriPharma $250,000, less the amount of any Adequate Protection Payments (as defined in paragraph 24(b) hereinbelow) paid to TriPharma by that date.

ii. Months 3-24 After Effective Date. Commencing on the first day of the third full month following the Effective Date of the Plan, and continuing on the first day of each third month thereafter, for a total of eight quarters,

Imagenetix shall pay to TriPharma a quarterly payment in the amount of $100,000 (i.e., for a total of $800,000).

iii.     Months 27-36 After Effective Date.  Commencing on the first day of the twenty-seventh full month after the Effective Date of the Plan, and continuing on the first day of each third month thereafter, for a total of four quarters, Imagenetix shall pay to TriPharma a quarterly payment in the amount of $125,000 (i.e., a total of $500,000).

iv.     Month 39 After Effective Date Through Each Remaining Quarter During the Term of the Plan.  Commencing on the first day of the thirty-ninth  full month after the Effective Date of the Plan, and continuing on the first day of each third month thereafter, until such time as the Settlement Payment Obligation is paid in full, plus any accrued interest thereon, Imagenetix shall pay to TriPharma the lesser of the following amounts:  (i) $150,000, or (ii) the balance of the amount of the Settlement Payment Obligation, plus any and all interest accrued thereon pursuant to the provisions of paragraph 10(a)(vi) hereof.

v.     Prepayment Discount Obligation.  Provided that there has not occurred any Uncured Default (as defined in paragraph 12 hereof), Imagenetix shall have the right to satisfy, discharge and pay in full the Settlement Payment Obligation by paying to TriPharma payments in the aggregate amount of $2.0 million ("Prepayment Discount Obligation"), less the amount of any Adequate Protection Payments paid by Imagenetix, if the amount of the Prepayment Discount Obligation is paid within 18 months after the Effective Date of the Plan.

      vi.      <u>Interest</u>.  Interest on the Settlement Payment Obligation shall accrue at the rate of 6% per annum, compounded quarterly, commencing on the first day of the 18th month after the Effective Date of the Plan, and continuing until such time as Imagenetix's obligations to TriPharma, as set forth hereunder, are paid in full.

      vii.      <u>Right to Prepay Obligations</u>.  Subject to the provisions of paragraph 10(a)(v) hereof, Imagenetix shall have the right to prepay, at any time, its obligations to TriPharma set forth hereunder.

      viii.      <u>Manner of Payment</u>.  All payments required to be paid by Imagenetix shall be effected by wire transfer to the Law Offices of John R. Walton Client Trust Account; provided, however, that, if the law firm of McKennon Shindler, LLP ("McKennon Firm") objects to such manner of payment, payments of any amounts disputed by the McKennon Firm shall be effected by wire transfer to an account specially designated for receipt of such payments acceptable to the McKennon Firm, or shall be interplead by Imagenetix pursuant to further order of the Bankruptcy Court.

      ix.      <u>Application of Payments</u>.  All payments paid by Imagenetix to TriPharma pursuant to this Agreement (including, without limitation, Adequate Protection Payments, payments on account of TriPharma's allowed secured claim and payments on account of TriPharma's allowed general unsecured claim) shall be applied against, and in reduction of, the Settlement Payment Obligation (if made timely) or the Stipulated Obligation (in the event of a default, but in no event in excess of $3.5 million, plus any interest thereon).

-13-

b.      Amendment of TriPharma Bankruptcy Claims.  Effective as of the Effective Date of the Plan, the TriPharma Bankruptcy Claims shall be deemed to be amended to reflect that TriPharma's allowed claims in the Bankruptcy Case are in the aggregate amount of the Stipulated Obligation and are payable under the Plan in accordance with the terms and conditions set forth herein.

c.      Plan Terms.  The Plan shall provide, in part, the following material terms for the treatment of the Stipulated Obligation:

i.      TriPharma shall have an allowed secured claim against Imagenetix in the amount of $3.5 million.

ii.      TriPharma shall have an allowed general unsecured claim against Imagenetix in the amount of $4.0 million.

iii.      TriPharma's allowed secured claim shall be secured by a second-priority security interest encumbering all assets of Imagenetix, as provided by paragraph 11 of this Agreement.

iv.      TriPharma's allowed general unsecured claim shall be classified along with all other allowed general unsecured claims against Imagenetix under the Plan.  Pursuant to the Plan, holders of allowed general unsecured claims shall be paid not less than 20% of the amount of their allowed general unsecured claims, in quarterly installments, over a period not to exceed the term set forth in paragraph 10(a)(iv) of this Agreement.

v.      Imagenetix may pay in full TriPharma's allowed secured claim and allowed general unsecured claim pursuant to the Plan by Imagenetix's paying to TriPharma the payments required by paragraphs 10(a)(i) - (vi) of this Agreement,

-14-

notwithstanding the treatment of allowed general unsecured claims under the Plan. At the option of Imagenetix, Imagenetix may apply the payments made to TriPharma fully toward TriPharma's allowed secured claim.

vi.      TriPharma shall accept installment payments on account of its allowed secured claim and allowed general unsecured claim pursuant to the Plan in the aggregate amount of the payments set forth in paragraphs 10(a)(i) - (vi) of this Agreement, notwithstanding the treatment of allowed general unsecured claims under the Plan.

vii.      TriPharma hereby acknowledges and agrees that, provided that Imagenetix complies with its obligations to TriPharma pursuant to the Plan, Imagenetix shall have the right to pay in full TriPharma's allowed secured claim and general unsecured claim pursuant to the Plan by paying to TriPharma the amount of the Settlement Payment Obligation, plus any interest thereon pursuant to the provisions of paragraph 10(a)(vi), or by paying to TriPharma the amount of the Prepayment Discount Obligation, if applicable.

viii.      TriPharma hereby acknowledges and agrees that in no event shall TriPharma have the right to collect on account of the Stipulated Obligation payments in a total amount in excess of $3.5 million plus any interest payable hereunder (i.e., TriPharma shall accept, absolutely and unconditionally, under all circumstances, $3.5 million plus any interest payable hereunder in full and complete satisfaction of its allowed secured claim and allowed general unsecured claim against Imagenetix). Upon Imagenetix's payment to TriPharma of the payments required by this Agreement (which in no event shall exceed

$3.5 million plus any interest payable hereunder), the Stipulated Obligation shall be deemed to be fully and completely satisfied, discharged and extinguished and any unpaid balance of the Stipulated Obligation shall be deemed irrevocably and unconditionally to have been waived and released by TriPharma.

    d.    <u>TriPharma's Acceptance of Payments Outside of Plan</u>. Imagenetix shall have the right to pay in full its obligations to TriPharma under this Agreement by paying to TriPharma the Settlement Payment Obligation, or the Prepayment Discount Obligation, if applicable, in the manner set forth by paragraph 10(a) hereof, whether or not a Plan is confirmed by Imagenetix in the Bankruptcy Case (<u>e.g.</u>, upon any dismissal of the Bankruptcy Case); under such circumstances, references to the "Effective Date of the Plan" in paragraph 10(a) shall be deleted and shall be replaced by a date to be fixed by Imagenetix but in no event later than April 1, 2014.

    **11.**    **Collateral.** Effective as of the Effective Date of the Plan, and pursuant to the Plan, Imagenetix shall grant to TriPharma, on account of TriPharma's allowed secured claim, a second-priority security interest encumbering all assets of Imagenetix, tangible and intangible, including all intellectual property rights, cash, receivables and rights of any kind ("Collateral"). On or as soon as reasonably practicable after the Effective Date of the Plan, Imagenetix shall execute and deliver to TriPharma any document reasonably requested by TriPharma, and shall take any act reasonably requested by TriPharma, in order to perfect TriPharma's interest in the Collateral.

    **12.**    **Payment Default.** Except only for the initial $250,000 payment required by paragraph 10(a)(i) hereof and the first quarterly payment required by paragraph 10(a)(ii) hereof, Imagenetix shall have the right, on two occasions during the term of the Plan, to cure any default

-16-

by Imagenetix in paying its payment obligations to TriPharma under the Plan provided that such cure is effected within ten (10) business days after notice as described herein. In the event that Imagenetix should fail to pay to TriPharma any payment required under the Plan, TriPharma shall provide to Imagenetix written notice of such default. In the event that Imagenetix fails to cure such default within ten (10) business days after such written notice, such default shall be deemed to be an uncured default under the Plan ("Uncured Default"), and TriPharma then shall be entitled to exercise, without further notice to Imagenetix or need of any order of the Bankruptcy Court, all rights and remedies that it may have against Imagenetix as a matter of applicable law. Without limiting the generality of the foregoing, subject to the provisions of paragraph 10(c)(vii) hereof, upon the occurrence of an Uncured Default, TriPharma shall have the following rights and remedies:

      a.    <u>Acceleration</u>. All payment obligations of Imagenetix to TriPharma shall automatically accelerate.

      b.    <u>Default Interest</u>. Interest shall accrue on the amount of TriPharma's allowed secured claim, less any and all principal payments made to TriPharma hereunder, at the rate of 15% per annum, compounded quarterly.

      c.    <u>Foreclosure</u>. TriPharma shall be entitled to foreclose on the Collateral.

    **13.**    **Resolution of Litigation.** Effective as of the Effective Date of the Plan, and pursuant to the Plan, the Parties shall take the following acts in connection with the Litigation:

      a.    <u>Cancellation of Notice of Judgment Lien</u>. TriPharma shall file a cancellation of the TriPharma Judgment Lien with respect to the TriPharma Judgment.

      b.    <u>Satisfaction of Judgment</u>. TriPharma shall file a Notice of Satisfaction of Judgment as to Spencer with respect to the TriPharma Judgment.

    c.    <u>Arbitration II</u>.  The Parties shall dismiss, with prejudice, Arbitration II.

    d.    <u>GNC Action</u>.  Imagenetix shall dismiss, with prejudice, the GNC Action. TriPharma shall be solely responsible for paying or otherwise resolving any claims that the GNC Action Defendants may assert against TriPharma in connection with the GNC Action, including, without limitation, any claims for indemnification or contribution. Imagenetix shall be solely responsible for paying or otherwise resolving any claims that Shustak & Partners, PC may assert against Imagenetix with respect to its representation of Imagenetix in connection with the GNC Action.

    e.    <u>Solstice Action</u>.  Imagenetix shall dismiss, with prejudice, the Imagenetix Cross-Claims asserted with respect to the Solstice Action.

    f.    <u>MAX Action</u>.  At the written request of TriPharma, Imagenetix shall provide to TriPharma any cooperation reasonably requested by TriPharma with respect to the MAX Action, without any material expense or disruption to Imagenetix.  Imagenetix shall not assert any claim against MAX, or any claim with respect to any monies payable to TriPharma with respect to the MAX Action.

    g.    <u>Fraudulent Transfer Action</u>.  TriPharma shall dismiss, with prejudice, the Fraudulent Transfer Action as to all Fraudulent Transfer Action Defendants.

**14.**    **<u>Mutual Release of Claims.</u>**

    a.    <u>Releases by Imagenetix Parties</u>.  Subject to the provisions of paragraph 20 hereof, effective as of the Effective Date of the Plan, except only for the obligations imposed upon TriPharma and Dameshek by this Agreement and the rights reserved by Imagenetix and Spencer by this Agreement (as such obligations and rights may be effectuated pursuant to the Plan and the Amended EMSA), Imagenetix and Spencer, for

themselves and for their respective predecessors, heirs, successors, assigns, affiliates, principals, members, shareholders, directors, officers, employees, parent corporations or entities, subsidiary corporations or entities, representatives, agents, attorneys, accountants, spouses, and each of them (collectively, "Imagenetix Parties"), absolutely, fully and forever, release, relieve, waive, relinquish and discharge TriPharma and Dameshek and their respective predecessors, heirs, successors, assigns, affiliates, principals, members, shareholders, directors, officers, employees, parent corporations or entities, subsidiary corporations or entities, representatives, agents, attorneys, accountants, spouses, and each of them (collectively, "TriPharma Parties"), of and from any and all such manner of actions, causes of action, suits, debts, deficiencies, liabilities, demands, claims, obligations, costs, expenses (including attorneys' fees and costs), sums of money, controversies, damages, accounts, reckonings, security interests and liens of every kind or nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, matured or unmatured, liquidated or unliquidated, in tort, in contract or otherwise, which relate to or arise out of any matter, fact or transaction arising prior to the Execution Date of this Agreement, including, without limitation, any claims relating to or arising under the TriPharma Judgment and any claims relating to any of the facts or matters set forth in the Recitals to this Agreement.

     b.   <u>Releases by TriPharma Parties</u>.  Subject to the provisions of paragraph 20 hereof, effective as of the Effective Date of the Plan, except only for the obligations imposed upon Imagenetix and Spencer by this Agreement and the rights reserved by TriPharma and Dameshek by this Agreement (as such rights and obligations may be effectuated pursuant to the Plan and the Amended EMSA), the TriPharma Parties

-19-

absolutely, fully and forever, release, relieve, waive, relinquish and discharge the

Imagenetix Parties, Debra Spencer and the Fraudulent Transfer Action Defendants, and

each of them, of and from any and all such manner of actions, causes of action, suits,

debts, deficiencies, liabilities, demands, claims, obligations, costs, expenses (including

attorneys' fees and costs), sums of money, controversies, damages, accounts, reckonings,

security interests and liens of every kind or nature whatsoever, whether known or

unknown, suspected or unsuspected, fixed or contingent, matured or unmatured,

liquidated or unliquidated, in tort, in contract or otherwise, which relate to or arise out of

any matter, fact or transaction arising prior to the Execution Date of this Agreement,

including, without limitation, any claims relating to or arising under the Imagenetix

Cross-Claims and any claims relating to any of the facts or matters set forth in the

Recitals to this Agreement.  Notwithstanding anything to the contrary contained in the

foregoing, the releases given herein by the TriPharma Parties do not include releases of

and shall not operate to release, any claims against any of the following parties or any of

their respective officers, directors, employees, agents, successors or partners:  MAX; the

Solstice Action Defendants.  Regenyx Ltd., Kenneth Cole, Penelope Cole, John Payne

and Donna Payne; or the First Fruits Action Defendants.

    15.   **Scope of Releases.**  Each of the Parties acknowledges the fact that it is its

intention that, upon the Effective Date of the Plan, this Agreement shall be effective as a full and

final accord and satisfaction and settlement of and as a bar to each such manner of action, cause

of action, suit, debt, deficiency, liability, demand, claim, obligation, cost, expense, sum of

money, controversy, damage, account, reckoning, security interest and lien of every kind or

nature whatsoever, heretofore referred to and released as of the Execution Date of this

Agreement, which any of the Imagenetix Parties, on one hand, and any of the TriPharma Parties,

on the other hand, has had, has, or may have against each other. In connection with such waiver

and relinquishment, each Party acknowledges that it is aware that it or its attorneys may hereafter

discover facts different from or in addition to the facts which it or its attorneys now know or

believe to be true with respect to the subject matters of this Agreement and that it may have

sustained or may yet sustain damages, costs or expenses that are presently unknown and that

relate to those claims, but that it is its intention hereby to fully, finally, absolutely and forever

settle, as of the Effective Date of the Plan, any and all claims which do now exist, may exist or

heretofore have existed among the Imagenetix Parties, on one hand, and the TriPharma Parties,

on the other hand, in accordance with the terms of this Agreement and that, in furtherance of

such intention, the releases herein given shall be and shall remain in effect for all time as full and

complete general releases notwithstanding the discovery of any such different or additional facts

or of any such additional damages, costs or expenses. Therefore, each Party acknowledges that it

is familiar with Section 1542 of the Civil Code of the State of California, which provides as

follows:

> **"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH
> THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS
> OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE,
> WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY
> AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."**

Except only for the rights expressly reserved by each Party pursuant to this Agreement,

effective as of the Effective Date of the Plan and the Amended EMSA, each Party does hereby

waive and relinquish all rights and benefits which it has or may have under Section 1542 of the

Civil Code of the State of California, and any other comparable statutes of any other states in the

United States, to the full extent that it may lawfully waive all such rights and benefits pertaining to the subject matters of this Agreement.

16.     **No Rescission of Releases.**  As a part of the foregoing releases, each Party acknowledges that it understands and accepts the risk that the facts with respect to which the releases provided by this Agreement are entered into may be different from the facts now known or believed by it to be true.  From and after the Effective Date of the Plan, the releases provided by this Agreement shall not be subject to termination or rescission by virtue of any such differences in fact.  In entering into this Agreement, and the releases provided by this Agreement, each of the Parties acknowledges that it has conducted its own independent investigation, has consulted with legal counsel of its own choice, and has not relied on any statement, representation, promise, inducement or agreement not expressly contained within this Agreement.

17.     **Covenants Not to Sue.**

a.      **No Commencement or Continuation of Actions or Proceedings.**  The Parties hereby covenant and agree not to commence or to continue against each other any action or proceeding of any nature whatsoever with respect to any of the claims released by this Agreement.  The Parties hereby further covenant and agree not to join in or to participate in any action or proceeding based upon, arising out of or relating to any of the claims released by this Agreement, unless such participation is compelled by order of a court of competent jurisdiction.

b.      **No Inconsistent Acts.**  The Parties hereby covenant and agree not to take any acts inconsistent with the intent and purposes of the releases provided by this Agreement.

CLEAN-#190247-v11-Imagenetix_TriPharmaStlmtAgmt.docx
Exhibit "1", Page 24

18.   **No Assignment of Released Claims.**  Each Party represents and warrants to the other Parties that it has not assigned or transferred, and will not assign or transfer, to any person or entity any of the claims released by this Agreement.

19.   **No Admission of Wrongdoing.**  Each Party acknowledges and agrees that this Agreement contemplates and provides for the resolution of disputed claims, and that no Party makes any admission of any wrongdoing.  By this Agreement, no Party admits any liability to the other Party, except as set forth expressly to the contrary herein.

20.   **Limitation on Releases.**

a.   FFBM/FFBC/Catarino/Guss.  Nothing contained herein shall be construed to provide to FFBM, FFBC, Catarino or Greg Guss, or to any of their respective predecessors, heirs, successors, assigns, affiliates, principals, members, shareholders, directors, officers, employees, parent corporations or entities, subsidiary corporations or entities, representatives, agents, attorneys, accountants, or spouses, any release of any claims that any Party may have against any of them.

b.   Solstice Action Defendants.  Nothing contained herein shall be construed to provide to any of the Solstice Action Defendants, Regenx, One on One, John Payne or Kenneth Cole, or to any of their respective predecessors, heirs, successors, assigns, affiliates, principals, members, shareholders, directors, officers, employees, parent corporations or entities, subsidiary corporations or entities, representatives, agents, attorneys, accountants, or spouses, any release of any claims that any Party may have against any of them.

c.   MAX Action Defendants.  Nothing contained herein shall be construed to provide to any of the MAX Action Defendants or to any of their respective predecessors,

-23-

heirs, successors, assigns, affiliates, principals, members, shareholders, directors, officers, employees, independent business operators, parent corporations or entities, subsidiary corporations or entities, representatives, agents, attorneys, accountants, or spouses, any release of any claims that any Party may have against any of them.

      d.    <u>Spencer/Fraudulent Transfer Action Defendants</u>.  Nothing contained herein shall be construed to provide to Spencer, to any of the Fraudulent Transfer Action Defendants, or to any of their respective predecessors, heirs, successors, assigns, affiliates, principals, members, shareholders, directors, officers, employees, parent corporations or entities, subsidiary corporations or entities, representatives, agents, attorneys, accountants, or spouses, any release of any claims that Imagenetix may have against any of them.

**21.**    <u>**Non-Interference and Non-Disparagement.**</u>

      a.    <u>No Disparaging Comments</u>.  The Imagenetix Parties, on one hand, and the TriPharma Parties, on the other hand, shall refrain from volunteering comments disparaging about each other, unless the making of any such comments is compelled by order of a court of competent jurisdiction and the entity making such comments reasonably believes them to be true.  This obligation shall expire as of the first day of the 18th month after the Effective Date of the Plan.

      b.    <u>Non-Interference</u>.  The Imagenetix Parties, on one hand, and the TriPharma Parties, on the other hand, shall refrain from interfering with, or causing any disruption to, the business activities of each other.  Without limiting the generality of the foregoing, Imagenetix hereby agrees that, subject to the occurrence of the Approval Date of this Agreement, it will take no voluntary act to challenge or impair in any manner the

-24-

validity or value of the rights granted to TriPharma under the Original EMSA, as will be amended by the Amended EMSA, and this agreement shall survive indefinitely.

**22.** **Cooperation Pending Confirmation of Plan.**

Effective as of the Approval Date of this Agreement, and so long as this Agreement has not been terminated pursuant to paragraph 27 of this Agreement, the Parties shall take the following acts:

      a.    <u>No Acts Contrary to Interests of the Parties</u>.  The Imagenetix Parties, on one hand, and the TriPharma Parties, on the other hand, shall exert their respective reasonable best efforts to refrain from taking any acts contrary to the interests of the other Parties, except as otherwise provided herein and except as necessary to enforce their respective rights not related to the Bankruptcy Case.

      b.    <u>Assumption of Original EMSA</u>.  In furtherance of the settlement provided for by this Agreement, effective as of the Approval Date of this Agreement, Imagenetix shall assume, pursuant to Section 365 of the Bankruptcy Code, the Original EMSA, as amended by the Amended EMSA.

      c.    <u>Rights to UM Patent and Trisynex Trademark</u>.  Upon any inquiry made from third parties, Imagenetix shall acknowledge and confirm that, apart from any record ownership interests of FFBM, TriPharma is the sole and exclusive licensee of the UM Patent and the owner of the Trisynex Trademark, and is the sole legitimate supplier of the formulation tested in the UConn Study.

      d.    <u>Stay of Litigation</u>.  To the maximum extent practicable, the Imagenetix Parties, on one hand, and the TriPharma Parties, on the other hand, shall stipulate to a stay of all pending litigation activity among them, including, without limitation, by using

their reasonable best efforts to take off calendar pending motions and by seeking the vacating of trial and other litigation deadlines by notifying the applicable courts that a conditional settlement has been reached among the Parties. Without limiting the generality of the foregoing, the Parties shall use their reasonable best efforts to continue the hearing dates on Imagenetix's pending summary judgment motion in the GNC Action, and on TriPharma's opposition to Imagenetix's Motion for Order Authorizing Compensation to Insiders ("Insider Compensation Motion") in the Bankruptcy Court. In the event that the Parties are unable to obtain from a court a stay of pending litigation, the Parties shall execute and file stipulated dismissals, without prejudice, with all costs and fees waived, of such litigation, subject to an agreement of the Parties that such litigation may be re-filed in the same court and service of process with respect thereto effectuated upon existing counsel of record, provided that any such dismissals does not impair materially the rights, interests, claims or remedies of a party to such litigation.

      e.    <u>Cooperation by Imagenetix</u>. Subject to Imagenetix's right to comply with its contractual obligations and other duties, including any fiduciary duties of Imagenetix, Imagenetix shall (i) refrain from offering any voluntary assistance to any party adverse to TriPharma, and (ii) vote its membership interests in FFBM and FFBC in support of any proposition that TriPharma may reasonably propose.

      f.    <u>TriPharma's Cooperation in Bankruptcy Case</u>. Subject to and conditioned upon the occurrence of the Approval Date of this Agreement, TriPharma shall provide to Imagenetix cooperation with respect to facilitating an orderly, efficient and expeditious administration of the Bankruptcy Case and confirmation of a Conforming Plan, including, without limitation, as follows:

CLEAN-#190247-v11-Imagenetix_TriPharmaStlmtAgmt.docx
Exhibit 1, Page 28

29

i.      TriPharma shall take no actions in the Bankruptcy Case which would have the effect of delaying or interfering with Imagenetix's efforts to obtain confirmation of a Conforming Plan, except only to the extent necessary to enforce its rights hereunder.

ii.     TriPharma shall provide to Imagenetix any cooperation reasonably requested by Imagenetix with respect to Imagenetix's efforts to obtain confirmation of a Conforming Plan.

iii.    After any approval by the Bankruptcy Court of any disclosure statement that may be filed by Imagenetix accompanying a Conforming Plan ("Disclosure Statement"), TriPharma shall vote its claims in acceptance of the Conforming Plan.

iv.     TriPharma shall take no act, or file any objection or other pleading, in opposition to any action or proceeding filed by Imagenetix in the Bankruptcy Case, provided that such action or proceeding is not inconsistent with the terms and conditions of this Agreement.  Without limiting the generality of the foregoing, TriPharma shall not oppose any of the following:  the Insider Compensation Motion, provided that the hearing on the Insider Compensation Motion occurs not earlier than two weeks after the entry of an order of the Bankruptcy Court approving this Agreement; a Disclosure Statement; any motion filed by Imagenetix for authority to use any cash collateral of any secured claimant in the Bankruptcy Case; and a Conforming Plan.  Notwithstanding anything to the contrary contained in the foregoing, TriPharma shall reserve any

and all rights that it may have to object to any claims asserted in the Bankruptcy Case by FFBM, FFBC, any of the Solstice Action Defendants.

      v.    TriPharma shall not object to Pacific Rainbow's claim or seek to avoid the security interest asserted by Pacific Rainbow so long as, by so doing, TriPharma's right to object to such claim or to seek to avoid such security interest is not impaired in the event of any termination of this Agreement pursuant to paragraph 27 hereof.

Any silence or non-opposition by TriPharma with respect to actions or proceedings filed by Imagenetix or claims or remedies asserted by Imagenetix in the Bankruptcy Case shall not be interpreted as agreement with such actions, proceedings, claims or remedies, or as an admission that any particular statement or claim made by Imagenetix is true.

      g.    <u>No Filing of Non-Conforming Plan</u>.  Imagenetix shall file no Plan other than a Conforming Plan, except that Imagenetix may file a Plan other than a Conforming Plan if Imagenetix terminates this Agreement pursuant to the provisions of paragraph 27 hereof.

      h.    <u>Forbearance on TriPharma's Rights to Assert Claims</u>.  TriPharma hereby agrees that it will not assert any new claims, or file any new action or proceeding seeking monetary damages from a third party with respect to any sales by such third party of Product that it purchased from Imagenetix prior to November 15, 2011.  Notwithstanding the foregoing:

      i.    Such forbearance by TriPharma shall not be deemed to be a license, release, waiver or acquiescence by TriPharma with respect to such sales

-28-

and shall not be construed as making any third party within the scope of this limited forbearance a beneficiary of such forbearance.

ii.   Nothing contained herein shall impair or limit any right of TriPharma to assert claims, including claims seeking damages, based upon false advertising, unfair competition, false labeling or false marking

iii.   Nothing contained herein shall impair or limit any right of TriPharma to assert the primacy of its rights with respect to the Product or to oppose in any manner any claim or argument that may be asserted by any person or entity that it holds rights competing with or inconsistent with TriPharma's rights under the EMSA, this Agreement or the Amended EMSA.

iv.   This forbearance shall not apply to claims against the First Fruits Defendants, the MAX Defendants, the Solstice Defendants, Regenyx Ltd., Kenneth Cole, Penelope Cole, John Payne or Donna Payne.

v.   Imagenetix commits to provide all reasonable cooperation to TriPharma in the enforcement of its rights under this Agreement and the Amended EMSA, without any material expense to Imagenetix.

23.  **Rule 9019 Motion.** Within ten (10) business days after the execution of this Agreement by each of the Parties, Imagenetix shall file in the Bankruptcy Court, and serve on all appropriate parties (including, without limitation, FFBM, Trinity Beverage Company and Catarino), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, a motion to obtain from the Bankruptcy Court approval of this Agreement ("Rule 9019 Motion"), in a form reasonably acceptable to TriPharma. In connection with the proceedings regarding the Rule 9019 Motion, Imagenetix shall file pleadings, attend hearings and take such other legal

action as may be appropriate to seek approval as promptly as reasonably practicable of this Agreement. TriPharma shall cooperate in submitting declarations and other legal pleadings in support of the approval of the Rule 9019 Motion.

**24.** **Pre-Confirmation Allowed Secured Claim of TriPharma/Adequate Protection Payments.**

     a.    Pre-Confirmation Allowed Secured Claim. Pursuant to the Rule 9019 Motion, Imagenetix shall request that the Bankruptcy Court enter an order determining that, effective as of the Approval Date, TriPharma shall have an allowed secured claim against Imagenetix, to the extent of $75,000, secured by a lien encumbering Imagenetix's accounts receivable and inventory junior to any valid, duly perfected and unavoidable security interest held by Pacific Rainbow ("Pre-Confirmation Allowed Secured Claim").

     b.    Adequate Protection Payments. Commencing on the first day of the first full month following the Approval Date, and continuing on the first day of each month thereafter until the earlier of the Effective Date of the Plan or such time as the Pre-Confirmation Allowed Secured Claim is paid in full, Imagenetix shall pay to TriPharma, in the manner provided for by paragraph 10 hereof, monthly payments in the amount of $15,000 on account of and applied against TriPharma's Pre-Confirmation Allowed Secured Claim ("Adequate Protection Payments"). The fixing of the amount of the Pre-Confirmation Allowed Secured Claim of TriPharma hereunder is without prejudice to any rights that TriPharma may have to contend that the entire amount of the Stipulated Obligation is secured in the event that the Rule 9019 Motion is not approved by the Bankruptcy Court.

    c.    <u>Application of Plan Payment</u>. Upon Imagenetix's payment under the Plan of the payment to be paid to TriPharma pursuant to paragraph 10(a)(i) hereof, the Pre-Confirmation Allowed Secured Claim of TriPharma shall be and shall be deemed to be paid in full.

    d.    <u>Release of Liens</u>. Upon payment in full of the amount of the Pre-Confirmation Allowed Secured Claim, TriPharma shall take as soon as reasonably practicable thereafter all acts appropriate to release any liens on account of the Pre-Confirmation Allowed Secured Claim.

**25.    <u>Imagenetix's Diligence with Respect to Confirmation of a Plan</u>.** Imagenetix shall file in the Bankruptcy Court, within 30 days after the Approval Date, a Conforming Plan and an accompanying Disclosure Statement. Imagenetix shall act diligently to attempt to obtain approval of the Disclosure Statement and confirmation of the Conforming Plan such that an order of the Bankruptcy Court confirming the Plan is obtained as promptly as reasonably practicable after the Approval Date.

**26.    <u>Approval Date</u>.** Subject to the provisions of paragraph 27 hereof, this Agreement shall be effective and binding on the Parties on the first day upon which each of the following conditions have been satisfied ("Approval Date"): (a) each Party has executed this Agreement and delivered the signed Agreement to the other Parties; (b) the Bankruptcy Court enters an order approving this Agreement and authorizing Imagenetix to perform its obligations under this Agreement ("Bankruptcy Court Approval Order"); and (c) the Bankruptcy Court Approval Order becomes a final and non-appealable order.

/ / /

/ / /

CLEAN-#190247-v11-Imagenetix_TriPharmaStlmtAgmt.docx
Exhibit "1", Page 33

27. **Termination.**

    a.     <u>Termination Events</u>. This Agreement may be terminated at the option of a non-defaulting Party upon the occurrence of any of the following events:

        i.     <u>Denial of Approval of Agreement</u>. The Bankruptcy Court enters an order denying approval of this Agreement;

        ii.     <u>Denial of Confirmation of the Plan</u>. The Bankruptcy Court enters an order denying confirmation of a Conforming Plan, and Imagenetix does not or cannot propose an amended Plan by March 31, 2014; or

        iii.     <u>Effective Date Deadline Not Met</u>. The Effective Date of the Plan has not occurred by March 31, 2014; provided however, that, at the request of Imagenetix, TriPharma shall extend such deadline by ninety (90) days provided that Imagenetix is acting diligently and in good faith to effectuate the Effective Date of the Plan.

    b.     <u>Effect of Termination</u>. In the event of any termination of this Agreement as permitted by paragraph 27(a) hereof, except only as provided expressly to the contrary in paragraph 27(d) of this Agreement, this Agreement, and all of the provisions of this Agreement, shall be null and void <u>ab initio</u> and of no force or effect, and shall not be binding upon the Parties and the Parties shall be restored to the same respective positions that they were in as of the Execution Date of this Agreement, without any prejudice to such positions, and no Party shall have any liability or further obligation to the other Party by reason of this Agreement, except only for any breach of this Agreement occurring prior to or as a result of the termination of this Agreement. Except only as provided expressly to the contrary in paragraph 27(d) of this Agreement, upon any

termination of this Agreement, neither the existence of this Agreement nor its contents shall be deemed to be a presumption, concession, or admission by or against a Party or be admissible in evidence, or referred to for any purpose in the Bankruptcy Case, or in any action or proceeding, except in any action or proceeding relating to or arising out of any breach of this Agreement by a Party.

      c.     <u>Notice of Termination</u>.  A Party terminating this Agreement pursuant to paragraph 27(a) hereof shall give immediate written notice of such termination to the other Party at the address to which notices must be provided pursuant to paragraph 28(m) hereof.

      d.     <u>Retention of Rights by TriPharma</u>.  Notwithstanding any provision to the contrary contained in paragraph 27(b) of this Agreement, subject to the provisions of paragraph 27(e) of this Agreement, upon an occurrence of the Approval Date of this Agreement, TriPharma shall be entitled to retain, without termination or rescission or modification of any nature, all of the rights, interests, claims and remedies provided for by paragraphs 2, 3, 4, 5, 6, 22(b) and 24 hereof.

      e.     <u>Rescission of TriPharma's Rights</u>.  Notwithstanding any provision to the contrary contained in paragraph 27(d) of this Agreement, in the event that Imagenetix obtains an order from the Bankruptcy Court on no less than 28 days' notice determining that termination of this Agreement by Imagenetix is justifiable by reason of a material breach by TriPharma of any of its obligations pursuant to paragraph 22(f) hereof (and only as to obligations in paragraph 22(f)), the provisions of paragraph 27(d) shall be of no force and effect and all rights, interests, claims and remedies granted to TriPharma pursuant to paragraphs 2, 3, 4, 5, 6, 22(b) and 24 hereunder shall be and shall be deemed

to be automatically and unconditionally rescinded, revoked and terminated, and, in accordance with the provisions of paragraph 27(b) hereof, the Parties shall be restored to the same respective positions that they were in as of the Execution Date of this Agreement, without any prejudice to such positions, and no Party shall have any liability or further obligation to any other Party by reason of this Agreement, except only for any breach of this Agreement occurring prior to or as a result of the termination of this Agreement. Alternatively, in lieu of a termination of this Agreement by reason of any material breach by TriPharma of any of its obligations pursuant to paragraph 22(f) hereof after an order of the Bankruptcy Court finding such material breach occurred, Imagenetix may elect to temporarily rescind, revoke and terminate the rights and remedies granted to TriPharma pursuant to paragraphs 2, 3, 4, 5, 6, 22(b) and 24 hereunder ("Revocation Election"). In the event of any exercise of the Revocation Election, all rights of TriPharma under paragraphs 2, 3, 4, 5, 6, 22(b) and 24 hereunder shall be restored and shall be in full and effect upon the Effective Date of any Conforming Plan, but Imagenetix shall preserve all rights, remedies and claims against TriPharma as a result of such alleged breach by TriPharma of its obligations under paragraph 22(f) hereof. Imagenetix shall file with the Bankruptcy Court notice of its election to either terminate this Agreement or to exercise the Revocation Election within 30 days after the entry of an order of the Bankruptcy Court finding material breach by TriPharma of its obligations under paragraph 22(f).

**28.** **Miscellaneous**.

    a.    Modification. This Agreement may not be modified or amended, except by an instrument in writing signed by each of the Parties.

b.   <u>No Waiver; Delay in Acting</u>.  To be effective, any waiver by a Party of

any rights hereunder must be expressed in a writing executed by such Party.  If a Party

waives any power, right or remedy arising hereunder or under any applicable law, such

waiver shall not be deemed to be a waiver upon any later occurrence or recurrence of any

events giving rise to the earlier waiver.  No failure or delay by a Party to insist upon the

strict performance of any term, condition, covenant, or agreement of this Agreement, or

to exercise any right, power or remedy hereunder shall constitute a waiver of any such

term, condition, covenant or agreement or of any such breach, or preclude such Party

from exercising any such right, power, or remedy at any later time or times.

c.   <u>Counterparts; Facsimile or Electronic Signature</u>. This Agreement may be

signed in counterparts with the same effect as if the signatures appeared on the same

instrument, and each signed counterpart shall be deemed to be an original.  Facsimile or

electronic transmission of any signed original document, and retransmission of any

signed facsimile or electronic transmission, shall be the same as delivery of an original.

d.   <u>Authorized Execution</u>.  Each individual executing this Agreement on

behalf of a Party represents and warrants that (i) he is authorized to execute this

Agreement for such Party, and (ii) such Party shall be bound in all respects hereby.

e.   <u>Attorneys' Fees and Costs</u>.  Each Party shall bear its own attorneys' fees

and costs arising from or related to the negotiation and execution of this Agreement.  In

the event of any action or proceeding to enforce, modify, interpret, construe, invalidate,

rescind, or set aside any term or provision of this Agreement, however, a prevailing Party

shall be entitled to an award of its costs and expenses, including reasonable attorneys'

fees and costs, incurred as a result of such action or proceeding, including any appeals resulting therefrom.

      f.    <u>Governing Law; Choice of Forum</u>.  This Agreement shall be construed and enforced according to the laws of the State of California, without reference to conflicts of law principles.  Any action or proceeding brought to enforce, modify, interpret, construe, invalidate, rescind or set aside any of the terms or provisions of this Agreement, may be brought only in the Bankruptcy Court (subject only to the right of appeal).  Each of the Parties hereby consents to the exclusive jurisdiction of the Bankruptcy Court to enforce the provisions of this Agreement and for all such matters, and hereby waives any objection that it may have to such jurisdiction.  Notwithstanding the foregoing, in the event that the Bankruptcy Case should be closed or dismissed, any action or proceeding to enforce, modify, interpret, construe, invalidate, rescind or set aside any of the terms or provisions of this Agreement shall be resolved solely through binding arbitration at JAMS-Orange County under JAMS Commercial Arbitration Rules.  If either TriPharma or Imagenetix fails to pay its share of JAMS fees and such failure delays the progress of the arbitration, the arbitrator is directed to enter a default and render the award in favor of the non-defaulting party.

      g.    <u>Severability</u>.  If any part of this Agreement shall be determined to be illegal, invalid or unenforceable, that part shall be severed from the Agreement and the remaining parts shall be valid and enforceable, so long as the remaining parts continue to fulfill the original intent of the Parties.

      h.    <u>Free and Voluntary Act</u>.  The Parties hereby acknowledge and agree that they have read carefully this Agreement, know the contents thereof, have discussed them

with legal counsel, and sign the same of their own free and voluntary act with the intent to be legally bound thereby.

      i.    <u>No Construction against a Party</u>. The Parties have cooperated in the drafting and preparation of this Agreement. In any construction of this Agreement, or of any of its terms and provisions, the same shall not be construed against any Party.

      j.    <u>Reliance on Representations</u>. Each Party specifically acknowledges that it has not relied on any statement, representation, or promise of any other Party, or of any representative of any other Party, in executing this Agreement, except as expressly set forth herein.

      k.    <u>Entire Agreement</u>. This Agreement constitutes the entire agreement of the Parties with respect to the matters set forth herein, and supersedes any and all prior agreements or understandings, written or oral, between them relating to the subject matter of this Agreement. No other promises or agreements shall be binding upon the Parties with respect to this subject matter unless contained in this Agreement or separately agreed to in writing and signed by an authorized representative of each Party.

      l.    <u>Bankruptcy Court Approval</u>. Each Party shall take any and all acts, and execute any and all further documents, that may be reasonably appropriate to obtain Bankruptcy Court approval of this Agreement.

      m.    <u>Notices</u>. All notices, requests, demands, and other communications required by this Agreement shall be in writing and shall be delivered by facsimile, e-mail transmission (confirmed by "Read Receipt"), or in person, or mailed by first class registered or certified mail, as follows:

If Directed to Imagenetix:

Imagenetix, Inc.
10845 Rancho Bernardo Rd.
San Diego, CA 92127
Attn:  William Spencer
Tel:  (858) 674-8455
Fax:  (858) 674-8460
E-Mail:  Bill@imagenetix.net

With a Copy to:

Winthrop Couchot Professional Corporation
660 Newport Center Dr., #400
Newport Beach, CA 92660
Attn: Robert E. Opera, Esq.
Tel.: (949) 720-4130
Fax: (949) 720-4111
E-Mail: ropera@winthropcouchot.com

If Directed to Spencer:

William Spencer
c/o Imagenetix, Inc.
10845 Rancho Bernardo Road
San Diego, CA  92127
Tel: (858) 674-8455
Fax: (858) 674-8460
E-Mail:  Bill@imagenetix.net

With a Copy to:

Shustak & Partners, P.C.
401 West A St., #2330
San Diego, CA 92101
Attn:  Erwin J. Shustak, Esq.
Tel.: (800) 496-5900
Fax: (800) 868-9350
E-Mail:  eshustak@shufirm.com

CLEAN-#190247-v11-Imagenetix_TriPharmaStlmtAgmt.docx

Exhibit "1", Page 40

41

If Directed to TriPharma or Dameshek:

TriPharma, LLC
1278 Gleneyre Street
Laguna Beach, CA 92651
Attn:  Evan Dameshek
Tel.: (949) 209-9957
Fax: (949) 315-3747
Email:  edame@mac.com

With a copy to:

Law Officers of John R. Walton, P.C.
35 N. Lake Ave., #700
Pasadena, CA 91101
Attn:  John R. Walton, Esq.
Tel.: (626) 578-6000
Fax: (626) 578-6012
E-Mail:  jrw@waltonlawpc.com

If delivered by facsimile, by e-mail transmission, or personally, the date on which the notice, request, demand or other communication is delivered, and a copy thereof is sent by first class mail, postage prepaid, addressed to the addresses required by this paragraph 28(m), shall be the date on which such delivery is made.  If such notice, request, demand or other communication is delivered solely by mail as aforesaid, the date on which such notice, request, demand or other communication is received shall be the date of delivery.  A Party may designate in writing a different address to which any notice, request, demand or other communication is to be given hereunder to such Party.  Telephone numbers are listed for convenience purposes only and not for the purpose of giving notice pursuant to this Agreement.

n.      Captions.  Any captions to the paragraphs of this Agreement are solely for the convenience of the Parties, are not a part of this Agreement, and shall not be used for the interpretation or determination of the validity of this Agreement or any provisions thereof.

o.       Binding Obligation.  Upon the Approval Date of this Agreement, this Agreement shall be a legal, valid and binding obligation of each of the Parties in accordance with the terms of this Agreement.

p.       Interpretation.  Wherever in this Agreement the context so requires, reference to the neuter, masculine or feminine shall be deemed to include each of the others, and reference to either the singular or the plural shall be deemed to include the other.

q.       Further Assurances.  Except as set forth expressly to the contrary in this Agreement, each Party, at the request of another Party, shall execute and deliver to the requesting Party all such further documents, and shall take such further acts, as may be reasonably appropriate in order to confirm or carry out the provisions of this Agreement.

r.       Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of the respective predecessors, heirs, successors and assigns of the Parties.

s.       Parties-in-Interest.  Except as set forth expressly to the contrary in paragraph 14 hereof, nothing in this Agreement is intended to confer any rights or remedies under or by reason of this Agreement on any persons other than the Parties and any of their respective heirs, successors, and assigns, nor is anything in this Agreement intended to relieve or discharge the obligation of any third persons to a Party, nor shall any provision hereof give any third persons any right of subrogation against a Party.

t.       Amendments to Documents.  Any reference in this Agreement to a document means such document as it has been, or may be, amended, modified, restated or supplemented as of the Effective Date of the Plan, regardless of when it is prepared.

/ / /

/ / /

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date and year first above written.

IMAGENETIX, INC.

By: William Spencer
Its: Chief Executive Officer and President

William Spencer

TRIPHARMA, LLC

By: Evan Dameshek
Its: Managing Member

Evan Dameshek

MAINDOCS-#190247-v9-Imagenetix_TriPharmaStlmtAgmt-final

EXHIBIT "2"

**Further Amendment to Amended and Restated Exclusive Marketing and Supply Agreement**

This amendment is made and entered into as of August 29, 2013, with respect to the Exclusive Marketing and Sales Agreement as previously amended and restated and otherwise amended between Imagenetix, Inc., a Nevada corporation, on the one hand, and TriPharma, LLC, a Delaware limited liability company on the other, and as further modified by the arbitration award dated November 2, 2011 ("EMSA").

1. **Acknowledgment of TriPharma's Rights.**

   a.    Imagenetix acknowledges and confirms that, pursuant to the terms of the EMSA, TriPharma has been granted an exclusive license worldwide to market, sell  and distribute any and all products covered by Patent No. 6,899,892 ("892 Patent") in whole or in part ("Product") and to exclusively market, distribute, and sell the Product by referencing the 892 Patent and the University of Connecticut clinical study on a compound identified as Trisynex, and the exclusive right to market, distribute, and sell Trisynex (whether by that name or any other name  to which TriPharma or its customers have rights) to the exclusion of all others.  Per the terms of the EMSA, the initial term of this exclusive license expires on October 1, 2014 subject to TriPharma's right of renewal for successive five-year terms.

   b.    Imagenetix acknowledges that TriPharma has fulfilled the minimum purchase or royalty requirements necessary for TriPharma to maintain the exclusivity on its rights and to renew the EMSA.  Unless notice of non-renewal is given by TriPharma, the EMSA shall automatically renew for successive five-year terms as provided in Section 3.  No further minimum orders or royalty payments shall be required for such automatic renewal.

   c.    Imagenetix acknowledges that Trisynex is the "Original Trademark" within the meaning of the EMSA and that, as a result, "all right, title and interest in" the Trisynex mark belongs "exclusively to TriPharma" as provided in Section 1.7 of the EMSA.

   d.    Imagenetix acknowledges that from November 2, 2011 to date, whether because of the requirements of the Bankruptcy Code or otherwise, it is has not been capable of manufacturing and delivering Product in response to TriPharma's orders and does not intend to fulfill such orders in the future.  Accordingly, pursuant to Section 2.1 of the EMSA, Imagenetix irrevocably assigns to TriPharma all rights to manufacture Product, and likewise assigns to TriPharma all documents, information, know-how and trade secrets associated with such manufacturing.  Imagenetix agrees that it shall not disclose or transmit to any third-party such documents, information, know-how and trade secrets except by written consent of TriPharma or upon lawful order of a court.  In the event such information is sought by court order, Imagenetix shall give TriPharma immediate notice of such event and shall cooperate with TriPharma in either resisting disclosure or ensuring that adequate safeguards are in place to protect confidentiality.

   e.    Imagenetix acknowledges that it retains no further rights, current or residual, with respect to the '892 Patent, the UConn Study or the Product.

1

**2.     Imagenetix Waiver of Further Performance by TriPharma.**

     a.     Pursuant to the terms of this Amendment, and in consideration of the payments already made and the release of claims by TriPharma for further payments by Imagenetix, no further orders, payments, notices or other performance by TriPharma under the EMSA shall be required.

     b.     Henceforth, Imagenetix shall have no involvement whatsoever in TriPharma's manufacturing, marketing and sales of Product under the EMSA.   TriPharma is free to assign, license or sublicense its rights under the EMSA without notice to or approval by Imagenetix.

**3.     Continued Obligations of Imagenetix.**

     a.     Imagenetix grants a paid-up, irrevocable license to TriPharma to use Celadrin in manufacturing Product.

     b.     Imagenetix agrees to supply Celadrin for use in manufacturing Product to TriPharma at a price equal to $30.00 per kilogram for a period of 5 years for use by TriPharma solely in connection with the sale of weight loss products, which use is expressly licensed by Imagenetix, and for no other purpose. Thereafter, Imagenetix shall supply Celadrin to TriPharma for the same purposes at a price not greater than the lowest price Imagenetix charges in the ordinary course to any of its customers.

**4.     All Prior Inconsistent Terms Deemed Deleted**

     a.     This Amendment shall operate to amend but not replace the EMSA.  Except to the extent supplanted or contradicted by this Amendment, the terms of the Original EMSA shall continue to apply.

     b.     To the extent there is any ambiguity or contradiction between the terms of the Original EMSA and the terms of this Amendment, the terms of this Amendment shall control and govern. All terms and provisions in the EMSA that are contradictory or inconsistent with the terms of this Amended EMSA are deemed to be removed.

**5.     General Terms**

     a.     As with the Original EMSA, this Amendment is governed by the internal laws of the State of California applicable to contracts made and to be performed in California.

     b.     Imagenetix and TriPharma agree that any future disputes arising under or relating to the EMSA shall be resolved exclusively by arbitration at JAMS-Orange County under JAMS Commercial Arbitration Rules.  If any party fails to pay arbitration fees or arbitrator fees and the arbitration is delayed as a result, the arbitrator is directed to enter a default against the party not paying and proceed to enter a default award against such non-paying party.

     c.     This Amendment may be executed in counterparts.

2

d.    The effectiveness of this Amendment is subject to and conditioned upon an order from the Bankruptcy Court approving the terms of the Settlement and Release Agreement between Imagenetix and TriPharma, but is not otherwise subject to any conditions as to enforceability. In the event of any inconsistency between the terms of this Amendment and the terms of the Settlement and Release Agreement, the terms of the Settlement and Release Agreement shall govern and control.

**IN WITNESS WHEREOF**, the Parties have executed this Amendment as of the date and year first above written.

**IMAGENETIX, INC.**

By: William Spencer
Its: Chief Executive Officer and President

**TRIPHARMA, LLC**

By: Evan Dameshek
Its: Managing Member

3

EXHIBIT "2"

EXHIBIT "2"

TENTATIVE RULING

ISSUED BY JUDGE MARGARET M. MANN

Debtor:      IMAGENETIX, INC.

Number:    12-16423-MM11

Hearing:    02:00 PM Thursday, October 10, 2013

Motion:    MOTION APPROVING COMPROMISE OF CONTROVERSY FILED BY DEBTOR

On August 30, 2013, Debtor file a Motion Approving Compromise with TriPharma.   On September 30, Pacific Rainbow International (PRI) filed a limited objection, noting that Debtor has not put forth evidence to satisfy section 363.   PRI does not object to the compromise or the sale but the Court needs further evidence to make its necessary findings.

As part of this compromise, Debtor is agreeing to transfer to TriPharma certain property covered by PRI's UCC-1, including Debtor's ownership interests and related rights in and to First Fruits Business Ministry, LLC. As such, this Motion is more than a Motion to Approve Compromise, it is also a Motion to Sell Property Free and Clear of Liens under section 363.Because the Compromise of Controversy involves the sale of property subject to a lien, Debtor must provide evidence   that the sale meets the requirements of 11 U.S.C. § 363.   Specifically, The Debtor needs to provide evidence that the sale is for fair market value.   Although a finding of the good faith of the purchaser is not necessary to approval the sale, the proponent of section 363(m) good faith has the burden of proof if the purchaser would like such a finding at the sale. *T. C. Investors v. Joseph (In re M Capital Corp.),* 290 B.R. 743, 746 (B.A.P. 9th Cir. 2003).   A "good faith purchaser" is one who buys "in good faith" and "for value." *Id.* at 746. In the Ninth Circuit, the "good faith" inquiry centers on fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders. *See Ewell v. Diebert* , 958 F.2d 276, 279 (9th Cir. 1992); *Thomas v. Namba (In re Thomas),* 287 B.R. 782 (B.A.P. 9th Cir. 2002).   The Debtor may file additional evidence in accordance with this ruling prior to the hearing.

# EXHIBIT "3"

# EXHIBIT "3"

210B (12/09)

# United States Bankruptcy Court

Southern District of California
Case No. 12-16423-MM11
Chapter 11

In re: Debtor(s) (including Name and Address)

Imagenetix, Inc.
10845 Rancho Bernardo Road, #105
San Diego CA 92127

### NOTICE OF TRANSFER OF CLAIM OTHER THAN FOR SECURITY

The Claim No(s). listed below was/were filed or deemed filed under 11 U.S.C. § 1111(a) in this case
by the alleged transferor.  As evidence of the transfer of that claim, the transferee filed a Transfer of
Claim Other than for Security in the clerk's office of this court on 04/21/2015.

| Name and Address of Alleged Transferor(s): | Name and Address of Transferee: |
| --- | --- |
| Claim No. 15: TriPharma, Attn: Corporate Officer, 1278 Gleneyre St #285, Laguna Beach, CA 92651-3103<br>Claim No. 16: TriPharma, Attn: Corporate Officer, 1278 Gleneyre St #285, Laguna Beach, CA 92651-3103<br>Claim No. 17: TriPharma, Attn: Corporate Officer, 1278 Gleneyre St #285, Laguna Beach, CA 92651-3103 | Dutch Harbour Financial Ltd./Stephen Crawley<br>43-58 DominionCenter 908<br>Queens Road East, Hong Kong |

### -- DEADLINE TO OBJECT TO TRANSFER --

The alleged transferor(s) of the claim is hereby notified that objections must be filed with the court
within twenty-one (21) days of the mailing of this notice.  If no objection is timely received by the
court, the transferee will be substituted as the original claimant without further order of the court.

Date:    04/24/15

Barry K. Lander
**CLERK OF THE COURT**

Case 12-16423-MM11   Filed 04/22/15   Entered 04/24/15 21:22:26   Doc 494   Pg. 2 of 2

United States Bankruptcy Court
Southern District of California

In re:                                                          Case No. 12-16423-MM
Imagenetix, Inc.                                                Chapter 11
          Debtor

## CERTIFICATE OF NOTICE

District/off: 0974-3        User: kduran        Page 1 of 1        Date Rcvd: Apr 22, 2015
                           Form ID: trc        Total Noticed: 3

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Apr 24, 2015.
13399945        TriPharma,    Attn:  Corporate Officer,    1278 Gleneyre St #285,    Laguna Beach, CA 92651-3103
13399945        TriPharma,    Attn:  Corporate Officer,    1278 Gleneyre St #285,    Laguna Beach, CA 92651-3103
13399945        TriPharma,    Attn:  Corporate Officer,    1278 Gleneyre St #285,    Laguna Beach, CA 92651-3103

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                                          TOTAL: 0

          ***** BYPASSED RECIPIENTS *****
NONE.                                                                                          TOTAL: 0

I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner
shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.

Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security
Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the
bankruptcy rules and the Judiciary's privacy policies.

Date: Apr 24, 2015                              Signature:  /s/Joseph Speetjens

## CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on April 21, 2015 at the address(es) listed below:
          Bernard D. Bollinger, Jr.   on behalf of Interested Party   Courtesy NEF bbollinger@buchalter.com,
          smartin@buchalter.com
          Dennis  Winters   on behalf of Creditor   Pacific Rainbow, Inc. winterslawfirm@cs.com
          Dheeraj  Singhal   on behalf of Creditor   TriPharma LLC dksinghal@dcdmlawgroup.com
          Garrick A. Hollander   on behalf of Debtor   Imagenetix, Inc. ghollander@winthropcouchot.com,
          pj@winthropcouchot.com;vcorbin@winthropcouchot.com;mconour@winthropcouchot.com
          Heather U. Guerena   on behalf of Interested Party   Frutarom USA, Inc. hcguerena@duanemorris.com,
          cdarmijo@duanemorris.com;rchurch@duanemorris.com;johta@duanemorris.com;ksakarin@duanemorris.com
          James Andrew Hinds, Jr.   on behalf of Creditor   TriPharma LLC jhinds@jhindslaw.com
          Jeannie  Kim   on behalf of Debtor   Imagenetix, Inc. jkim@winthropcouchot.com,
          pj@winthropcouchot.com;vcorbin@winthropcouchot.com
          John W. Cutchin   on behalf of Spec. Counsel Gregory P. Olson jcutchin@san.rr.com
          Kristin  Mihelic   on behalf of United States Trustee   United States Trustee
          Kristin.T.Mihelic@usdoj.gov,  tiffany.l.carroll@usdoj.gov
          Matthew  Bouslog   on behalf of Interested Party   Proprietary Nutritionals, Inc.
          mbouslog@gibsondunn.com,  pcrawford@gibsondunn.com
          Matthew  Bouslog   on behalf of Interested Party   Pharmachem Laboratories, Inc.
          mbouslog@gibsondunn.com,  pcrawford@gibsondunn.com
          Robert E. Opera   on behalf of Debtor   Imagenetix, Inc. ropera@winthropcouchot.com,
          pj@winthropcouchot.com;vcorbin@winthropcouchot.com;mconour@winthropcouchot.com
          Sarah D. Moyed   on behalf of Interested Party   UNITED STATES SECURITIES AND EXCHANGE COMMISSION
          moyeds@sec.gov
          United States Trustee   ustp.region15@usdoj.gov
                                                                                          TOTAL: 14

51

EXHIBIT "4"

EXHIBIT "4"

JAMES ANDREW HINDS, JR. (SBN 71222)
jhinds@jhindslaw.com
PAUL R. SHANKMAN (SBN 113608)
pshankman@jhindslaw.com
HINDS & SHANKMAN, LLP
21515 Hawthorne Boulevard, Suite 1150
Torrance, CA 90503
Telephone: (310) 316-0500
Facsimile: (310) 792-5977

Attorneys for Secured Creditor, TriPharma, LLC

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 12-16423 MM11 |
| IMAGENETIX, INC., a Nevada corporation, | Chapter 11 Proceeding |
| Debtor and Debtor-in-Possession. | NOTICE OF DEFAULT BY THE DEBTOR ON POST-PLAN CONFIRMATON PAYMENT DUE TO TRIPHARMA, LLC |

**PLEASE TAKE NOTICE** that TriPharma, LLC, secured creditor under the terms of the Debtor's confirmed chapter 11 Plan in this matter, hereby declares that the Debtor is in default under Section 12 of the parties' approved Settlement Agreement, the Debtor missed a post-plan confirmation payment due to TriPharma, LLC which was due on December 1, 2014. TriPharma, LLC specifically reserves all rights to foreclose on the assets of the Debtor as provided for in paragraph 12 of the approved Settlement Agreement.

Dated: December 30, 2014

TRIPHARMA, LLC

By: _____
EVAN DAMESHEK

/ / /

1

Dated: December 30, 2014

JAMES ANDREW HINDS, JR.
PAUL R. SHANKMAN
HINDS & SHANKMAN, LLP

By:
JAMES ANDREW HINDS, JR.
Attorneys for Secured Creditor, TriPharma,
LLC

2

## CERTIFICATE OF SERVICE

I, Mayra Duran declare as follows:

I am employed in the County of Los Angeles, State of California; I am over the age of 18 years and am not a party to the action; and my business address is 21515 Hawthorne Boulevard, Suite 1150, Torrance, California  90503.

On December 31, 2014 I served: **NOTICE OF DEFAULT BY THE DEBTOR ON POST-PLAN CONFIRMATON PAYMENT DUE TO TRIPHARMA, LLC** on the interested parties as follows and by the following means of service:

 X   On December 31, 2014, I checked the CM/ECF docket for the Bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the e-mail addresses stated below:

Service information continued on attached page.

___  **BY FACSIMILE**:  On the above captioned date, from Torrance, California, I caused each such document to be transmitted by facsimile machine to the parties and numbers indicated above.  To the best of my knowledge, the transmission was reported as complete, and no error was reported by the facsimile machine.  A copy of the transmission record is maintained by our office.

___  **BY ELECTRONIC MAIL**: From Torrance, California, I caused each such document to be transmitted electronically to the parties at the e-mail address indicated above. To the best of my knowledge, the transmission was reported as complete, and no error was reported that the electronic transmission was not completed.  A return receipt was requested at the time of the transmission of each such document and I did not receive a notice of failure of receipt of each document.

 X   **BY FIRST CLASS MAIL**: On December 31, 2104, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury and the laws of the State of California and the United States of America that the above is true and correct.

Executed on December 31, 2014, at Torrance, California.


                    /s/ Mayra Duran
                    MAYRA DURAN

**NEF SERVICE LIST:**

Bernard D. Bollinger bbollinger@buchalter.com
Dennis Winters winterslawfirm@cs.com
Dheeraj Singhal dksinghal@dcmlawgroup.com
Garrick A. Hollander
ghollander@winthropcouchot.com
Heather U. Guerena huguerna@duanemorris.com
Jeanie Kim jkim@winthropcouchot.com
John W. Cutchin jcutchin@san.rr.com
Kristin Mihelic Kristin T. Mihelic@usdoj.gov;
tiffiny.1.carrollMihelic@usdoj.gov
Matthew Bouslog mbouslog@gilsondunn.com
pcrawfordmbouslog@gilsondunn.com
Robert E. Opera ropera@winthropcouchot.com
Sarah D. Moyed moyeds@sec.gov
U.S. Trustee ustp.region15@usdoj.gov

**MAIL SERVE LIST:**

Imagenetix, Inc.
10845 Rancho Bernardo Road
Suite 105
San Diego, CA 92127-2107

Erwin J. Shustak, Esq.
Shustak & Partners P.C.
401 West Broadway
Suite 2330
San Diego, CA 92101-7914

Gregory P. Olson, Esq.
Law Offices of Gregory P. Olson
501 West Broadway
Suite 1370
San Diego, CA 92101-3556

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who have consented to electronic service are being served with a copy of this **NOTICE OF SECURED CREDITORS LIEN AGAINST ALL RECOVERIES FOR THE PLAINTIFF IMAGENETIX, INC.** via CM/ECF system on November 23, 2015.


Dated:      November 23, 2015         By:    /s/ Paul R. Shankman_____
                                             Attorney for Secured Creditor
                                             Dutch Harbour Financial Ltd.

NOTICE OF SECURED CREDITOR'S LIEN AGAINST ALL RECOVERIES FOR THE
PLAINTIFF IMAGENETIX, INC.